IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| MARTIN NGANGA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ROBINS FEDERAL CREDIT ) <br> UNION, *et al.*, ) <br> ) <br> Defendants. ) | CIVIL ACTION NO. 5:22-CV-144 (MTT) |

## ORDER

On April 7, 2022, Plaintiff Martin Nganga, proceeding pro se, filed a lawsuit against Defendants Robins Federal Credit Union ("RFCU"), Christina O'Brien, and Mendy Miller. Doc. 1. Nganga also filed a motion to proceed *in forma pauperis* ("IFP"). Doc. 2. The Court granted Nganga IFP status, but because Nganga's complaint was lacking, the Court ordered him to recast his complaint before it conducted a frivolity review pursuant to 28 U.S.C. § 1915. Doc. 3. Nganga filed his recast complaint on June 24, 2022. Doc. 6. For the reasons stated, Nganga may proceed only with his § 1981 retaliation claim against Defendants RFCU and Miller. The remainder of Nganga's claims are **DISMISSED** without prejudice.

### I. BACKGROUND

Nganga is a member of RFCU. Doc. 6 ¶ 1. On April 3, 2021, Nganga deposited a $9,000 cashier's check into his account via a RFCU ATM. *Id*. ¶ 12. However, he was unable to withdraw these funds a couple days later, and his debit card was declined

when he attempted to make purchases.  *Id*. ¶¶ 13-14.  On April 8, Nganga visited a RFCU branch to find out why he could not access the money he deposited, and he was told that the cashier's check had been flagged as suspicious.  *Id*. ¶¶ 15-16.  Suspicions were cleared, however, after a discussion with RFCU's fraud department.  *Id*. ¶ 16.

When Nganga entered the RFCU branch, he went straight to branch manager Mendy Miller's office, where he alleges that she told him to leave her office and wait in the lobby.  *Id*. ¶ 33.  Nganga then "admonish[ed] her actions as rude and racially motivated and swore to lodge a complaint against her with her superior."  *Id*.

After this admonishment and after his account was reopened, Nganga asked a teller to deposit his $1,400 Economic Stimulus check into his account.  *Id*.  However, the check spelled Nganga's last name "Pganga," and when the teller asked Miller how to proceed, Miller told the teller not to cash the check.  *Id*. ¶¶ 34-35.  Nganga alleges that in the past he has deposited misspelled checks into his account.  *Id*. ¶ 22.  And on April 12, 2021, Nganga successfully cashed the misspelled check at a different RFCU branch.  *Id*. ¶ 24.

## II.  STANDARD

Section 1915 does not create an absolute right to proceed IFP in civil actions.  28 U.S.C. § 1915.  "Where the IFP affidavit is sufficient on its face to demonstrate economic eligibility, the court should first docket the case and then proceed to the question of whether the asserted claim is frivolous."  *Martinez v. Kristi Kleaners, Inc.*, 364 F.3d 1305, 1307 (11th Cir. 2004) (cleaned up).  The Court shall dismiss the case if it determines that the complaint (1) "is frivolous or malicious;" (2) "fails to state a claim

on which relief may be granted;" or (3) "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A claim is frivolous if it "has little or no chance of success," meaning that it appears "from the face of the complaint that the factual allegations are 'clearly baseless' or that the legal theories are 'indisputably meritless.'" *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993). "A dismissal under § 1915(e)(2)(B)(ii) [for failure to state a claim] is governed by the same standard as a dismissal under Federal Rule of Civil Procedure 12(b)(6)."[1] *Thomas v. Harris*, 399 F. App'x 508, 509 (11th Cir. 2010) (citing *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997)). However, because Middlebrooks is proceeding pro se, his "pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003) (internal quotation marks and citation omitted). But "[d]espite the leniency afforded pro se plaintiffs, the district court does not have license to rewrite a deficient pleading." *Osahar v. U.S. Postal Serv.*, 297 F. App'x 863, 864 (11th Cir. 2008) (citation omitted).

### III.  DISCUSSION

Nganga attempts to state claims for slander per se, § 1981 discrimination and retaliation, and deprivation of personalty.

---

[1] To avoid dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain specific factual matter "to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). On a motion to dismiss, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff*." Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006) (internal quotation marks and citation omitted).

### A. Slander Per Se

Nganga seems to allege slander per se based on RFCU's accusation of fraudulent criminal activity. Doc. 6 at 7 (stating RFCU "willfully and maliciously criminalized the Plaintiff to have deposited a fraudulent instrument[,]" and that "[f]raud under Georgia Criminal Code … is a crime punishable by law.").

"To be slander per se, the words are those which are recognized as injurious on their face—without the aid of extrinsic proof." *Bellemead, LLC v. Stoker*, 280 Ga. 635, 637, 631 S.E.2d 693, 695 (2006) (internal quotation marks and citation omitted). Under O.C.G.A. § 51-5-4, slander per se includes "[i]mputing to another a crime punishable by law." O.C.G.A. § 51-5-4(a). Accordingly, Nganga does allege that RFCU imputed to him that he fraudulently deposited a check. However, that only shows that he pled enough to allege a slanderous statement. A claim for slander per se requires more.

A slanderous statement must be published, which is "accomplished by communication of the slander to anyone other than the person slandered." *McCLesky v. The Home Depot, Inc.*, 272 Ga. App. 469, 471, 612 S.E.2d 617, 619 (2005). "[A]n exception to the broad definition of publication has evolved: when the communication is intracorporate, or between members of unincorporated groups or associations, and is heard by one who, because of his/her duty or authority has reason to receive information, there is no publication of the allegedly slanderous material." *Id*. at 471-472, 612 S.E.2d at 619-620 (citation and internal quotation marks omitted). This exception "is based on the sentiment that statements by either in the hearing of the other concerning such matters are the legal equivalent of speaking only to one's self[.]" *Kurtz v. Williams*, 188 Ga. App. 14, 15, 371 S.E.2d 878, 880 (1988) (cleaned up).

Here, Nganga alleges that "[o]n April 8, 2021, Robins Financial Credit Union Fraud Dept. via phone call that was coordinated by the Robins Financial Credit Union Riverside Branch … subjected [him] through a harsh and grueling interrogation where they humiliated him with false accusations of having deposited a suspicious and fraudulent Cashier's Check when in fact it was not."  Doc. 6 ¶ 25.  A phone call between Nganga and a RFCU employee is not enough to allege publication to a third party.  And to the extent that an employee of RFCU outside of the fraud department may have overheard the phone call or been told that Nganga's account had been flagged for potentially fraudulent behavior, that communication would not constitute publication because it was intracorporate—those employees have the authority to receive that information.  Accordingly, Nganga has not plausibly stated a claim for slander per se, and that claim is **DISMISSED** without prejudice.

### B.  42 U.S.C. § 1981

#### 1.  *Intentional Discrimination*

Nganga alleges that when Mendy Miller told Nganga "to leave her office and wait for his turn in the lobby," and then told the teller not to deposit his Economic Stimulus check, she discriminated against him in violation of section 1981 because "her mistreatment towards him was clearly racially motivated."  Doc. 6 ¶ 39.

"To state a claim of race discrimination under § 1981, plaintiffs must allege facts establishing: (1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute."  *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1270 (11th Cir. 2004).  One "of the activities enumerated

in the statute" is the "making and enforcing" of contracts.  42 U.S.C. § 1981(b).  To prove discrimination in the making and enforcement of contracts, the plaintiff must allege that the discrimination "caused a contractual injury."  *Zidayat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1296 (11th Cir. 2021).  "A contractual injury includes any injury relating to 'the making, performance, modification, or termination of the contract,' or 'the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.'"  *Id*. (quoting 42 U.S.C. § 1981(b)).

Nganga has alleged that he is a member of a racial minority, and that the discrimination concerned the enforcement of a contract—he was prevented from cashing a check at RFCU's institution, of which he is a member.  Thus, he has pled facts sufficient to satisfy the first and third elements of § 1981 racial discrimination.  However, Nganga has not adequately alleged that defendant Miller intended to discriminate against him because of his race.

First, Nganga has not alleged any direct discrimination.  "To state a claim for direct racial discrimination, a plaintiff must allege the overt invocation of race by the alleged discriminator—for instance, the use of a racial slur or racially charged language."  *Zidayat*, 3 F.4th at 1296.  Nganga has not alleged that defendant Miller mentioned his race when she told him to get out of her office or when she told the teller not to cash his check.  Thus, he has not alleged direct racial discrimination.

Nganga has not adequately alleged circumstantial racial discrimination either.  "A § 1981 plaintiff seeking to prove racial discrimination by circumstantial evidence may proceed under the *McDonnell Douglas* burden-shifting framework."[2]  *Id*.  The *McDonnell*

---

[2] Although the pleading standard at this stage does not require Nganga to establish a *McDonnell Douglas* prima facie case, his failure to allege facts relevant to any of the elements is significant.  *See*

*Douglas* framework requires "the plaintiff … point to comparators of a different race who were similarly situated in all material respects and were not subject to the same mistreatment." *Id*. (citation and internal quotation marks omitted).  Here, Nganga has not alleged a single other comparator, much less one who was similarly situated in all material respects.  Accordingly, Nganga's claim for § 1981 discrimination is **DISMISSED** without prejudice.

  2.  *Retaliation*

Nganga also alleges defendant Miller retaliated against him when she instructed the teller not to deposit his misspelled Economic Stimulus check after he "admonished her" and "vowed to file a racial mistreatment complaint with her supervisors which greatly humiliated and embarrassed her in the presence of the waiting customers and her subordinate employees."  Doc. 6. ¶ ¶ 41-42.

"To establish a claim of retaliation under … section 1981, a plaintiff must prove that he engaged in statutorily protected activity, he suffered a materially adverse action, and there was some causal relation between the two events."  *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008).  The causal link requirement should be interpreted broadly—"a plaintiff merely has to prove that the protected activity and the [adverse action] are not completely unrelated." *E.E.O.C. v. Reichhold Chem., Inc.*, 998 F.2d 1564, 1571-72 (11th Cir. 1993).

---

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-511 (2002) ("The prima facie case under *McDonnell Douglas* … is an evidentiary standard, not a pleading requirement.").

Here, Nganga has plausibly alleged a § 1981 retaliation claim against defendants RFCU and Miller.[3]  Nganga states that he is black and alleges that he threatened to report what he perceived as Miller's discrimination to her superiors while he was engaging in the "making and enforcing of contracts."  Doc. 6 ¶ 33 (alleging that he admonished Miller's "actions as rude and racially motivated and swore to lodge a complaint against her with her supervisor").  After Nganga stated he would report Miller's alleged discrimination, he went to a teller to deposit his Economic Stimulus check that misspelled his last name "Pganga."  The teller spoke to defendant Miller about the misspelling, who told the teller not to cash his check "and dismissed the plaintiff's objective explanation and reasoning in a condescending and hostile manner."  *Id*. ¶¶ 34-35.  Taking his allegations as true, which the Court must at this stage, Nganga's § 1981 retaliation claim should proceed for further factual development.

**C. Deprivation of Personalty**

Count three of Nganga's amended complaint alleges a claim for "deprivation of personalty," or, conversion.  O.C.G.A. § 51-10-1 states that "[t]he owner of personalty is entitled to its possession.  Any deprivation of such possession is a tort for which an action lies."  *Id*.  Conversion is composed of four elements: "(1) title to the property or the right of possession, (2) actual possession in the other party, (3) demand for the return of the property, and (4) refusal by the other party to return the property."  *Trey

---

[3] Nganga argues RFCU CEO defendant O'Brien is vicariously liable for Miller's conduct under the theory of respondeat superior because "she failed to intervene and supervise [d]efendant Mendy Miller in assisting the [p]laintiff."  Doc. 6 ¶ 46.  However, respondeat superior holds *employers* liable—O'Brien is not Miller's employer. (*See*, i.e., *Piazza v. Jefferson Cty., AL.*, 923 F.3d 947, 957 (11th Cir. 2019) ("Supervisory officials cannot be held liable under § 1983 for unconstitutional acts by their subordinates based on respondeat-superior or vicarious-liability principles.").  Therefore, Nganga cannot maintain a retaliation claim against defendant O'Brien.  Accordingly, defendant O'Brien is **DISMISSED**.

*Inman & Associates, P.C. v. Bank of America, N.A*., 306 Ga. app 451, 457, 702 S.E.2d 711, 716 (2010) (citation and internal quotation marks omitted).

Here, Nganga alleges that the defendants "dispossessed [him] his rightfully owned property when they seized his Bank Account without his consent and/or knowledge after he deposited a $9,000 Cashiers Check to his account." Doc. 6 ¶ 49. Although he alleges facts sufficient for elements (1) – (3), Nganga has not satisfied the last element for a conversion claim—that RFCU refused to return his $9,000. He states that after a discussion with the RFCU fraud department, the funds in his account were released to him. *Id*. ¶ 16 (stating that he "quickly dispelled their suspicions and accusations, and his account was reopened"). And while a plaintiff need not prove that his demand for the return of the property was rejected if the defendant came into possession of the property *illegally*, that is not the case here. *See Williams v. National Auto Sales, Inc*., 287 Ga. App. 283, 285, 651 S.E.2d 194, 197 (2007). Nganga deposited the money with RFCU, and Nganga's account was frozen temporarily. RFCU did not come into the possession of the money illegally. Accordingly, his claim for conversion is **DISMISSED** without prejudice.

### IV. CONCLUSION

Nganga only plausibly states a claim for retaliation under 42 U.S.C. § 1981. Accordingly, his slander, § 1981 discrimination, and conversion claims are **DISMISSED** without prejudice.

**SO ORDERED**, this 25th day of October, 2022.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
