IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| MARTIN NGANGA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 5:22-cv-144 (MTT) |
| ) | |
| ROBINS FINANCIAL CREDIT ) | |
| UNION, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**ORDER**

Defendants Robins Financial Credit Union ("RFCU") and Mandy Miller move for summary judgment on pro se plaintiff Martin Nganga's 42 U.S.C. § 1981 retaliation claim. Doc. 24. For the following reasons, that motion (Doc. 24) is **GRANTED**.

**I. BACKGROUND**[1]

---

[1] Unless otherwise stated, all facts are undisputed. Cognizant of Nganga's pro se status, following the defendants' motion for summary judgment, the Court advised Nganga of his duty to respond to the motion, including the admonitions that he could not rely on the pleadings but instead must present evidence to establish a genuine issue of material fact and must provide his own statement of material facts and respond to the defendants' statement of facts. Doc. 25. Despite this notice, Nganga's response failed to meet these requirements. Doc. 26. Nganga did not respond to the defendants' asserted facts with citations to the record, and he failed to provide his own statement of material facts that adequately cited to the record. Rather, Nganga's facts are re-stated from his complaint. *Id*. And Nganga has presented no evidence to support his claim. Thus, Nganga has "fail[ed] to properly support an assertion of fact [and] fail[ed] to properly address [the defendants'] assertion of fact as required by [Fed. R. Civ. P.] 56(c)," and, accordingly, "the court may … consider [those] fact[s] undisputed for purposes of the motion," pursuant to Rule 56(e)(2). Moreover, pursuant to Local Rule 56, those material facts asserted by the defendants, "which [Nganga has] not specifically controverted by specific citation to particular parts of materials in the record," are deemed to be admitted. M.D. Ga. L.R. 56 ("All material facts contained in the movant's statement [of material facts] which are not specifically controverted by specific citation to particular parts of materials in the record shall be deemed to have been admitted, unless otherwise inappropriate."). However, the Court has still "review[ed] … the record to 'determine if there is, indeed, no genuine issue of material fact.'" *Reese v. Herbert*, 527 F.3d 1253, 1269 (11th Cir. 2008) (quoting *United States v. One Piece of Real Prop.*, 363 F.3d 1099, 1103 n.6 (11th Cir. 2004)). And despite the deficiencies in Nganga's response, because Nganga is proceeding pro se and because summary judgment would lead to dismissal of his claim with prejudice, the Court has fully analyzed Nganga's claim for relief regardless of these failings and insufficiencies in his response. *United States v. 5800 SW 74th Ave.*, 363 F.3d 1099, 1101 (11th Cir. 2004). Therefore, if evidence in the record shows

On April 8, 2021, Nganga, a black male, went to RFCU's Riverside branch to deposit a $1,400.00 economic stimulus check. Docs. 24-1 ¶ 1; 26 at 1. "The teller at RFCU told Nganga that she could not cash the check because the name on the check was incorrect and did not match what was on the account." Doc. 24-1 ¶ 2. At Nganga's request, the teller had Miller—manager of the Riverside branch—review the check. *Id*. ¶ 3. "Nganga was asked to wait while Miller reviewed the check and that she would be back with him as soon as possible. This caused Nganga to 'admonish [Miller's] attitude.'" *Id*. ¶ 4. Because it was a United States Treasury check, Miller asked RFCU's operations team for advice. *Id*. ¶ 5. "Miller was instructed not to cash the check and to request that Nganga have the check re-issued with a correct spelling after which time RFCU could cash the re-issued check." *Id*. ¶ 5.

On April 7, 2022, Nganga sued RFCU, Miller, and Christina O'Brien, RFCU's Chief Executive Officer, and moved for leave to proceed *in forma pauperis* ("IFP"). Doc. 1. The Court granted Nganga leave to proceed IFP and ordered him to amend his complaint. Doc. 3. Pursuant to 28 U.S.C. § 1915, and because Nganga was proceeding IFP, the Court conducted a frivolity review of his amended complaint. Doc. 7. After review, the Court dismissed O'Brien, as well as Nganga's slander, § 1981 discrimination, and conversion claims. *Id*. at 9. Nganga was permitted to proceed with his § 1981 retaliation claim against RFCU and Miller. *Id*. RFCU and Miller then moved to dismiss Nganga's amended complaint. Doc. 15. Because their motion was limited to

---

that a fact is disputed, the Court draws all justifiable inferences in Nganga's favor for purposes of summary judgment.

the dismissed § 1981 discrimination claim, it was denied.  Doc. 19.  The defendants now move for summary judgment on Nganga's § 1981 retaliation claim.  Doc. 24.[2]

## II. STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is not genuine unless, based on the evidence presented, "a reasonable jury could return a verdict for the nonmoving party."  *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The movant may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).  "When the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim[]' in order to discharge this 'initial responsibility.'"  *Four Parcels of Real Prop.*, 941 F.2d at 1437-38 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  Rather, "the moving party simply may 'show[ ]—that is, point[ ] out to the district court—that there is an absence of evidence to support the nonmoving party's case.'"  *Id*. at 1438 (quoting *Celotex*, 477 U.S. at 324) (alterations in original).

---

[2] Nganga dedicates several pages of his brief to his dismissed § 1981 discrimination claim.  Doc. 26 at 4-8.  He also provides an "alternative argument" regarding "interference."  *Id*. at 10.  The Court considers the arguments contained within these portions of his brief to the extent they are relevant to his § 1981 retaliation claim.

Alternatively, the movant may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id*.

The burden then shifts to the nonmoving party, who must rebut the movant's showing "by producing … relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex*, 477 U.S. at 324). The nonmoving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable or is not significantly probative' of a disputed fact." *Id*. (quoting *Anderson*, 477 U.S. at 249-50). Further, where a party fails to address another party's assertion of fact as required by Fed. R. Civ. P. 56(c), "the court may … consider the fact undisputed for purposes of the motion[.]" Fed. R. Civ. P. 56(e)(2). However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge … [t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### III. DISCUSSION[3]

Because Nganga has presented no evidence to suggest retaliatory intent, the defendants are entitled to summary judgment.

---

[3] As the Eleventh Circuit has pointed out, "there exists scant authority in our circuit applying § 1981 to claims brought by customers against commercial establishments." *Kinnon v. Arcoub, Gopman & Assocs.*, 490 F.3d 886, 891 (11th Cir. 2007). There is even less authority specifically concerning § 1981 non-employment retaliation claims. *See Benton v. Cousins Props.*, 230 F. Supp. 2d 1351, 1381 (N.D. Ga. 2002) ("If there are few Section 1981 cases claiming harassment in connection with [a] non-employment contractual relationship, there are even fewer cases dealing with the question of retaliation outside the employment context, under Section 1981."). Where authority is lacking, the Court looks to employment retaliation precedent for guidance. *See Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304, 1311 (11th Cir. 2010) (citing employment retaliation precedent in analysis of non-employment § 1981 claim).

Section 1981(a) provides, in relevant part: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts." This includes equal rights in "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). The Supreme Court has held that § 1981 "encompasses claims of retaliation." *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 457 (2008). Moreover, § 1981 claims can be "brought by customers against commercial establishments." *Kinnon*, 490 F.3d at 891.

To succeed on a § 1981 retaliation claim, a plaintiff must present either direct or circumstantial evidence of retaliatory intent. Where the plaintiff relies on circumstantial evidence, he must first establish the elements of a § 1981 retaliation claim. *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008); *Kinnon*, 490 F.3d at 892-93. If the plaintiff establishes those elements, "the [defendant] has an opportunity to articulate a legitimate, nonretaliatory reason for the challenged … action as an affirmative defense to liability." *Goldsmith*, 513 F.3d at 1277; *Kinnon*, 490 F.3d at 892-93.[4] The plaintiff must then show that the defendant's stated reason is in fact pretext for retaliation. *Goldsmith*, 513 F.3d at 1277; *Kinnon*, 490 F.3d at 893-94. "The plaintiff bears the ultimate burden of proving retaliation by a preponderance of the evidence." *Goldsmith*, 513 F.3d at 1277; *Kinnon*, 490 F.3d at 892-93. The question ultimately is "whether the evidence permits a reasonable factfinder to find that the [defendant]

---

[4] In *Kinnon*, the Eleventh Circuit declined to decide whether the *McDonnell Douglas* framework applies to non-employment § 1981 discrimination claims. 490 F.3d at 893. However, the court proceeded to consider whether the plaintiff had shown the defendant's legitimate, nondiscriminatory reasons were pretextual. *Id*. at 893-94. Although *Kinnon* concerned discrimination, not retaliation, the Court finds its reasoning and holding persuasive.

retaliated against the" plaintiff.  *See Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1311 (11th Cir. 2023) (discussing section 1981 retaliation in employment).

"To establish a claim of retaliation under … section 1981, a plaintiff must prove that he engaged in statutorily protected activity, he suffered a materially adverse action, and there was some causal relation between the two events."  *Goldsmith*, 513 F.3d at 1277; *Jimenez*, 596 F.3d at 1311 (citing *Goldsmith* in non-employment § 1981 retaliation case).  The causal link element is construed "broadly, so that 'a plaintiff merely has to prove that the protected activity and the negative … action are not completely unrelated.'"  *Goldsmith*, 513 F.3d at 1278 (quoting *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998)).[5]

The defendants do not dispute that the refusal to cash Nganga's check was a materially adverse action.  *See generally* Docs. 24-2; 27.  However, they argue Nganga did not engage in protected activity, and even if he did, he has no evidence that the defendants' reasons for refusing to cash his check are pretext for retaliation.  Doc 24-2 at 4-5.

**A. Elements of § 1981 Retaliation Claim**

As best the Court can tell, Nganga's retaliation claim is based on one of two protected activities: (1) vocal complaints about RFCU's refusal to cash his check, or (2) the right to deposit a check regardless of his race.  Doc. 26 at 8-11.

---

[5] RFCU does not dispute that it can be held liable for its employees' actions.  *See generally*, Docs. 24-2; 27.

First, the defendants do not dispute that Nganga's complaints constituted statutorily protected activity.[6] *See* Doc. 27 at 3.  But Miller testified that Nganga did not complain until *after* he was informed that RFCU could not cash the check.  Doc. 24-3 ¶¶ 3-4.  And Nganga has presented no evidence to contradict that version of events.  Thus, there can be no causal relation because he engaged in protected activity *after* the materially adverse action.[7]  *Cf. Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006) (holding that, in employment retaliation claims, "when an employer contemplates an adverse employment action before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation").

Second, Nganga does not argue that the defendants retaliated against him because he tried to cash his check.  *See* Doc. 26 at 11.  In any event, although § 1981 protects Nganga's right to engage in business with RFCU regardless of his race, that right alone cannot be the basis for a retaliation claim.  Indeed, it would be circular to assert that the defendants did not cash his check in retaliation for him trying to cash his check.  *See Jimenez*, 596 F.3d at 1311 (A § 1981 retaliation claim requires the plaintiff to show that "a defendant retaliated against him because the plaintiff engaged in statutorily protected activity.").  Both parties seem to conflate a § 1981 discrimination

---

[6] The Court notes that, although Nganga claims he "told [Miller] he will be filing a lawsuit as her refusal to cash his check was motivated by racial animus," there is no evidence Nganga complained of racial discrimination.  Doc. 26 at 3; *See Jimenez*, 596 F.3d at 1311 ("As with other statutory retaliation claims, such a claim under § 1981 requires that the protected activity involve the assertion of rights encompassed by the statute.").  Because the defendants do not raise this issue, the Court will not address it.

[7] As the defendants note, "[t]his time sequence is important because the Court allowed Nganga's retaliation claim to proceed based on Nganga's allegation that Ms. Miller retaliated against him by instructing the teller not to deposit the misspelled check only because Nganga had *previously* threatened to file a complaint against her."  Doc. 27 at 3 (internal citations omitted).

claim and a § 1981 retaliation claim.  *See, i.e., Middleton v. Wells Fargo Bank, N.A.*, 474 F. Supp. 3d 1290 (N.D. Ga. 2020) (analyzing a § 1981 *discrimination* claim against a bank for its refusal to cash the plaintiff's check based on an alleged discriminatory presumption of fraud).

Accordingly, there is no evidence tending to establish the elements of Nganga's § 1981 retaliation claim.

**B. Legitimate, Nonretaliatory Reasons and Pretext**

Even if Nganga could establish those elements, he has failed to show that there is a genuine issue of material fact regarding the defendants' legitimate, non-retaliatory reasons for their conduct.  *See Kinnon*, 490 F.3d at 893 (holding that, in a non-employment section 1981 retaliation case, a plaintiff must rebut the defendant's legitimate, nonretaliatory reasons to survive summary judgment).  The defendants state Nganga's check was not cashed because his name was misspelled, and the record supports this reason: (1) RFCU's risk management and fraud detection policies "do not allow checks to be deposited or negotiated for cash when the name on the check does not match the name of RFCU's member as shown on RFCU's internal systems," (2) RFCU's membership agreement permits RFCU to "refuse to accept any check or draft drawn on [a member's] account that is presented for payment in person," (3) RFCU was aware of substantial fraud issues concerning misspelled checks, "[p]aper checks purporting to be from the United States Treasury," and economic stimulus checks, and (4) RFCU's operations team instructed Miller to not cash the check.  Docs. 24-2 at 4-5; 24-3 ¶ 5; 24-4 ¶¶ 6-7, 9-11; 24-5 at 4.  In opposition, Nganga makes meritless arguments regarding pretext.

First, he argues that RFCU was required to accept his check under the Uniform Commercial Code ("UCC").  Doc. 26 at 5, 9.  The UCC is not, by itself, law.  And Georgia's codification of the UCC provisions cited by Nganga do not require RFCU to accept misspelled checks—O.C.G.A. § 11-3-204 is about indorsements and § 11-3-413 does not concern misspelled checks.

Next, Nganga asserts that the defendants did not take affirmative steps to determine whether the check was in fact fraudulent.  Doc. 26 at 5-7.  Whether the defendants took the extra step to determine the check's validity is also irrelevant and Nganga does not explain how that undermines the defendants' legitimate, nonretaliatory reason for rejecting his check—which, importantly, was to prevent fraud.

Finally, Nganga argues that he had previously "cashed and deposited misspelled checks with RFCU" and was able to cash the misspelled check at another RFCU branch.  *Id*. at 10-11.  Whether other branches chose to follow RFCU's policies does not change the fact that those policies existed and its employees were instructed to follow them.  And beyond those policies, RFCU's operations team instructed Miller not to cash the check.  Doc. 24-3 ¶ 5.  In any event, Nganga provides no evidence that he successfully deposited the misspelled check or that he had done so previously.

In sum, Nganga has failed to present *any* evidence, much less evidence that the defendants acted with retaliatory intent.  Based on the record, it is clear that the defendants refused to cash Nganga's check because his name was misspelled, and for no other reason.

## IV. CONCLUSION

For the reasons explained, the defendants' motion for summary judgment (Doc. 24) is **GRANTED**.

**SO ORDERED**, this 19th day of March, 2024.

S/ Marc T. Treadwell<br>
MARC T. TREADWELL, CHIEF JUDGE<br>
UNITED STATES DISTRICT COURT